CASE No. 1037.

LOST BONDS CASE.[*]

GIBBES v. GREENVILLE AND COLUMBIA RAILROAD COMPANY.

STATE, *EX RELATIONE* ATTORNEY-GENERAL, v. SAME.

Certain persons holding ten first mortgage bonds and thirty-seven non-mortgage bonds of a railroad corporation, all of which were alleged to have been destroyed, but there was difficulty in establishing the loss, made, through their attorney, with the corporation, an agreement by which, in settlement of their claims, they received interest-fund bonds to the amount of $8600 for their first mortgage bonds and state guaranteed bonds to the amount of $16,000, and interest-fund bonds for $6725 for their non-mortgage bonds; and upon such bonds they collected interest for four years. The corporation afterwards became insolvent, and, upon sale, realized enough to pay its first mortgage and state guaranteed bonds in full, but the non-mortgage and interest-fund bonds proved to be worthless. These parties, retaining their state guaranteed bonds, offered to return their interest-fund bonds of $8600, and to establish their ten lost first mortgage bonds, claiming the lien of the first mortgage, and that the substituted bonds were *ultra vires*. This court concurred with referee and Circuit judge, in holding that the intention of the settlement was payment and not substitution, and, for that reason, and because in was a compromise of a doubtful right, made with full knowledge of the facts, and an arrangement which was a unity, refused to permit the petitioners to establish the ten lost bonds, or to claim for the substituted bonds the lien of the first mortgage.

Before KERSHAW, J., Richland, June, 1880.

. It will not be necessary to repeat the facts which are set forth in the opinion, but it will not be amiss to state some of the matters more fully.

* There were so many appeals in the cases of Gibbes *v.* Greenville and Columbia Railroad Company and the State, *ex relatione* the Attorney-General, against the same defendant, four of which appear in this volume, that, for the sake of distinction, I have given to them the nick-names by which they were designated at the bar.—REPORTER.

Jacob Burriss, as administrator of Milford Burriss, brought suit against the Greenville and Columbia Railroad Company for a recovery upon thirty-two lost bonds, of which four were first mortgage, the others non-mortgage. Judge Orr, by decree of February, 1872, gave judgment upon three of the non-mortgage bonds, but dismissed the action as to the others, without prejudice to plaintiff's right to sue thereon thereafter, stating that the circumstances to prove their destruction were strong, but not sufficient fully to establish it. In April, 1873, J. P. Reed wrote to W. J. Magrath, president of the railroad, in relation to the claim of Burriss, and cited parts of Judge Orr's decree, and, as attorney for Burriss, and also for Dr. B. F. Brown and one Daniel Brown, who owned several bonds, suggested negotiations for an arrangement by which these lost bonds might be funded on the same terms as if, the papers were produced, stating that, in his judgment, the ownership, identity and loss of these bonds *could now* be satisfactorily established. No further correspondence appears in the brief, until the agreement of April 29th, 1874, which is copied in the opinion. Soon afterwards the treasurer wrote as follows:

COLUMBIA, S. C., May 6th, 1874.
*J. P. Reed, Esq., Anderson, S. C.:*

DEAR SIR: We hand herewith bonds for account of the following named persons in settlement of claims of the respective parties, as per statements accompanying, which accord with the agreement of the 29th ultimo:

| | | |
|---|---|---|
| For account of Jacob Burriss, administrator, interest fund bonds, | | $5,200 |
| For account of Jacob Burriss, administrator, guaranteed bonds, | $11,000 | |
| For account of Jacob Burriss, administrator, I. F. bonds, | 4,625 | |
| | | 15,625 |
| For account of Benjamin F. Brown, I. F. bonds, | | 3,400 |

P

For account of Benjamin F. Brown, guaranteed
  bonds,                                  $5,000
For account of Benjamin F. Brown, I. F.
  bonds,                                  2,100
                                              ——— $7,100

    Please send receipt for same.
        Very respectfully, &c.,
                              C. H. MANSON,
                           *For G. & C. R. R. Co.*

Received May 12th, 1874, from the G. & C. R. R. Co., the
bonds named herein.
                              REED & BROWN,
                              *Per J. P. Reed.*

In the above statement, the $5200 were for six first mortgage
bonds, $3000, and interest for ten years and six months at
seven per cent., $2200; and the $3400 were for four first
mortgage bonds, $2000, and interest $1400; the other figures
represent amounts due on non-mortgage bonds. The interest
fund bonds of the Greenville and Columbia Railroad Company
were issued in July, 1873, and their payment guaranteed by the
South Carolina Railroad Company, a connecting line, and the
owner of a majority of the stock in the Greenville road. In
June, 1872, the action by Gibbes and the State, *ex rel.* the attor-
ney, had been commenced, and an order was then passed, de-
claring that the property of the Greenville and Columbia Rail-
road Company should continue in the possession of its president
and directors, under the order of the court, and subject to its
control; and creditors were called in. Burriss and Brown
drew interest on their new bonds from January, 1873, to July,
1877.

The claim of Burriss and Brown was presented, and the first
reference was held in March, 1880. In April, 1880, the road
was sold.

*Mr. J. S. Muller*, for appellants.

*Mr. James Conner*, contra.

April 30th, 1881. The opinion of the court was delivered by McGowan, A. J. In the cases above stated the court passed an order calling in those claiming to be creditors of the defendant corporation to present and prove their demands.

Under this call it appeared that one Milford Burriss owned, among other bonds of a different class, *six first mortgage bonds* of the Greenville and Columbia Railroad Company, $500 each, viz., Nos. 904, 920, 921, 924, 925 and 985, and, also, that one Benjamin F. Brown owned four bonds of the same class, viz., Nos. 952, 1424, 1556 and 1557, all of which bonds were destroyed at Anderson Court House by the federal army, about the close of the late war (1865), and the claim was made that said lost bonds should be established as if they had been produced and proved.

The claim was resisted, and the following facts appeared : In 1873 J. P. Reed, Esq., as attorney of the parties, B. F. Brown and the administrator of Milford Burriss, deceased, wrote to W. J. Magrath, president of the Greenville and Columbia Railroad Company, upon the subject of these lost bonds, saying : " I beg that you will consider the matter and be prepared to negotiate with me for these arrangements without further controversy. I have full authority in the premises, and am prepared to do what is right."

To this letter the president replied, submitting propositions which became the basis of settlement, as follows :

·" City of Columbia, S. C.

" In order to settle the claim of Jacob Burriss, as administrator of Milford Burriss, Benjamin F. Brown and Daniel Brown, for lost bonds of the Greenville and Columbia Railroad Company, and as a basis of settlement, it is agreed as follows, to wit :

" 1. *That for the first mortgage bonds, ten in number,* the company will issue the new bonds which are being issued in funding the past-due interest according to the plan recommended by the bondholders' committee, for the entire sum of the principal and interest up to the 1st day of January last inclusive.

" 2. *For the non-mortgage bonds,* there being thirty-seven in number, the company will deliver its bonds, guaranteed by the

state, issued during President Hammett's administration, for the principal sum, dollar for dollar, and for the interest, to be counted from the 1st day of January, 1868, to the 1st day of January, 1874; it will deliver the new bonds hereinbefore mentioned as being issued for funding the past-due interest."

This plan of settlement was accepted. The bonds described were delivered to Mr. Reed as attorney of the parties, who gave the following receipt:

"Received, May 12th, 1874, from G. & C. R. R. Company, the bonds named herein." [Giving the numbers and dates.]

"REED & BROWN."

The parties received the interest on the new bonds for several years, but, under the call aforesaid, produced the *new bonds* which had been issued in settlement of the *ten first mortgage bonds* before the master, and offered to surrender them, and claimed the right to prove their lost first mortgage bonds, in settlement of which these had been received.

The company resisted the claim, and insisted that the settlement in April, 1874, included *non-mortgage as well as first mortgage bonds* lost or destroyed; that the thirty-seven non-mortgage bonds were utterly worthless, for which the claimants received bonds guaranteed by the state, now worth par, and that they cannot claim the benefit of *part* of the settlement and repudiate the remainder of it; that the settlement was an entirety, accepted by the parties and final. The issues were referred to the master, N. B. Barnwell, Esq., who took the testimony, and held that the claimants "are not now entitled to renounce their position of parties claiming to have lost their first mortgage bonds; and as there are no new facts developed of which they cannot be presumed to have had full knowledge at the time of their compromise, and they had the advice and assistance of learned counsel in the matter; and, further, as for several years they regularly received the interest on their new bonds, they have no equitable ground on which to claim relief from their bargain; and, moreover, as I am of the opinion, the bonds they hold are, though not secured by mortgage, valid obligations of the corporation, I

see no ground whatever for now making a new and different arrangement from the one they made for themselves."

The cause was heard by Judge Kershaw, who confirmed the master's report, and from his decree the appeal comes to this court upon the following exceptions :

" 1. Because the master erred in finding that Jacob Burriss, the former administrator of Milford Burriss, received the said funded interest bonds Nos. 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, each for $500; Nos. 206 and 255, each for $100, in full satisfaction of the claim of his said intestate, Milford Burriss, deceased, against the said corporation under his lost first mortgage bonds, Nos. 904, 920, 921, 924, 925, 985.

" 2. Because the master should have found that the said funded interest bonds were received merely *as a substitute* for the said lost first mortgage bonds; that the estate of the said Milford Burriss has never lost or relinquished its interest in the first mortgage of the said company's railroad as security for the debt due the said estate by the said company, and that John W. Daniels, the present administrator, is now entitled to have the said debt paid out of the proceeds of the said first mortgage.

" 3. Because the master erred in not finding that the said funded interest bonds in the hands of the administrator of said estate were void and of no legal value as obligations of the said corporation.

" 4. Because the master erred in not finding that the guaranty of the South Carolina Railroad Company, purporting to be endorsed upon the said funded interest bonds, was void and of no legal value.

" 5. Because the master erred in finding that the said John W. Daniels, administrator of Milford Burriss, was not entitled to surrender the said funded interest bonds and be restored to his rights and the rights of his intestate under the said lost first mortgage bonds and the said first mortgage.

" 6. Because the said master erred in not finding that the arrangement between the said corporation and Jacob Burriss, former administrator of Milford Burriss, ought to be rescinded and the parties restored to their former rights and conditions.

" 7. Because the said master erred in not finding that Jacob

Burriss, administrator of Milford Burriss, had no right or power to make such a settlement of a debt due his intestate's estate, and that such settlement ought therefore to be rescinded and the parties remitted to their former rights and conditions."

It is insisted that the new bonds received in the settlement made by the claimants with the defendant corporation did not amount to *payment* or *satisfaction* of the lost first mortgage bonds, but were merely *substituted* for those bonds; and that the first mortgage covers and secures the evidence of the indebtedness *substituted* in the place of those—the lost bonds—for which they *were substituted.* If the question were *substitution* or *payment,* that was a matter of intention and made an issue of fact. The referee decided that question against the claimants, and the Circuit judge concurred with the referee. In case of such concurrence, this court, by a well-established practice, will not reverse the finding except " on clear or overbearing evidence." *Reporter's note,* 12 *S. C.* 612. We agree with the Circuit judge that " the testimony well warrants the finding of the fact of payment. The proposal was made to deliver the new bonds for the first mortgage bonds in order to 'settle' the claims. The new bonds were accepted '*in settlement*' of claims of the respective parties. Settlement of a debt or claim is payment, according to Bouvier, as well as in common parlance."

But the facts of the case make something more than a simple question of *substitution* or *satisfaction.* The idea of substitution is excluded by the fact that the mortgage was executed to secure certain bonds, particularly described and numbered, and the bonds now in possession of the claimants and proposed as substitutes for those originally secured by the mortgage are not mortgage bonds at all, but funded interest bonds of a particular issue, and secured, not by mortgage, but by the guaranty of the South Carolina Railroad Company. The first mortgage cannot reasonably be made to cover and secure such bonds. The claim made is really not *to substitute* the new bonds for the lost mortgage bonds, but to *vacate the agreement altogether* on the ground of mistake, and to set up now, as proved, not the new bonds as substitutes but the identical old lost mortgage bonds. The claimants

have no equity to cancel this part of their own executed contract for several reasons.

The bonds were lost or destroyed, and there was some difficulty in making the necessary proof to establish them. The parties owning the lost bonds made a proposition to settle the matter. Distinct terms of settlement were offered and accepted by them. We regard the arrangement then made as the compromise of a doubtful right, with full knowledge of all the facts, and as belonging to that class of agreements to which the doctrine as to mistakes does not ordinarily apply. The word "compromise" involves the idea of a surrender of rights. "If the parties intended the settlement as a composition or compromise of a doubtful or disputed right, the court will not, *on the sole ground of mistake*, set it aside. *Durham* v. *Wadlington*, 2 *Strob. Eq.* 258 ; *Keitt* v. *Andrews*, 4 *Rich. Eq.* 349. For it is obvious that in that case, inasmuch as the parties did not seek to conform their settlement to the exact facts of the case, the truth of no one fact could be regarded as vital to the consideration by which they were moved. For the same reason, if, for the want of information, the parties mutually assumed the existence of certain facts and understandingly dispensed with further inquiry as to their actual truth, the court will not interfere if this assumption turns out to be erroneous." *McDow* v. *Brown*, 2 *S. C.* 109 ; *Pratt* v. *Weyman*, 1 *McC. Ch.* 156.

There is another reason why these claimants have no equity to set up the *ten lost mortgage bonds*. That would be, in effect, to set aside the compromise agreement *in part*, and sustain it as to the other part. The arrangement not only embraced the ten lost mortgage bonds, *but also thirty-seven non-mortgage bonds,* which have turned out to be utterly worthless, but for which the parties received in the arrangement bonds of the company guaranteed by the state, which, after the priorities of the creditors of the company were ascertained, turned out to be worth *par and interest.* The parties have received the money on these, and, *quoad hoc*, do not propose to rescind the agreement. The settlement was a unity and cannot be maintained as to the part which was advantageous, and set aside as to the part which turned out to be disadvantageous. " Generally, no contract can be rescinded

by one of the parties unless both can be restored to the condition in which they were before the contract was made. If, therefore, one of the parties has derived an advantage from the partial per-formance, he cannot hold this and consider the contract as re-scinded because of the non-performance of the residue." *Pars. on Cont.* 679; *Hunt* v. *Silk*, 5 *East* 449; *Taylor* v. *Hare*, 1 *Bos. & Pull.* 260; *Fripp* v. *Fripp, Rice's Eq.* 84.

But it is urged that so much of the compromise agreement as relates to the *ten mortgage bonds* should be vacated for the reason that the *funded interest bonds* received in exchange for them in the arrangement were void and of no legal value, for the reasons that the Greenville and Columbia Railroad Company was in the hands of a receiver at the time they were issued, and the presi-dent and directors of that company had no authority or power to issue such bonds; and, also, because the guaranty of the South Carolina Railroad Company, endorsed on these bonds, was void and of no legal value. It has not been shown either that the president and directors of the Greenville and Columbia Railroad Company had no authority to issue such bonds as the funded interest bonds, or that the South Carolina Railroad Company had no right, legally, to guarantee said bonds. But we do not think these questions necessarily involved in this case. The prop-osition as to what terms the company would give to make the settlement was distinctly stated in writing, and as certainly accepted by the parties through their attorney. There is no allegation of misrepresentation, imposition or fraud. All the parties understood it or had the means of understanding it. The settlement was made and the bonds issued accordingly. The parties made their own contract with as full knowledge as they now possess in relation to the powers which could be legally exercised under the public acts incorporating the South Carolina Railroad Company and the Greenville and Columbia Railroad Company. They received the bonds thus issued and guaran-teed; enjoyed the advantages for which they bargained; collected the interest on them; held them without complaint for years, and now, when the makers and the guarantors of the bonds have become insolvent, ask that they may be restored to their former condition as to so much of the compromise agreement *as relates*

*to the ten mortgage bonds.* This they ask on the ground that they thought, when they contracted, that the *president* and *directors* of the Greenville and Columbia Railroad Company had the right to issue said bonds, and that the guaranty by them would bind the South Carolina Railroad Company, *whereas* they now discover that this was a mistake of law. It was ingeniously and strongly argued at the bar that in South Carolina, according to the decided cases, relief will be granted *for a mistake of law* in a certain class of cases, and that this case falls under that class. The general rule certainly is, that a contract will not be vacated on the ground of ignorance or a simple mistake of law. But we do not think it necessary to enter upon the discussion of this vexed question here. We regard this as an effort to set aside *a part of an agreement,* which was the compromise of a doubtful right, and we do not think that the parties have any equity to vacate part of their own executed agreement for mistake—if there was mistake—whether that mistake was one of law or of fact. " Where a compromise of a doubtful right is fairly made between the parties, whether the uncertainty rests upon a doubt of fact, or a doubt in point of law, if both parties are in the same ignorance, the compromise is equally binding, and cannot be affected by any subsequent investigation and result." *Durham* v. *Wadlington,* 2 *Rich. Eq.* 258.

The judgment of the court is, that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and McIVER, A. J., concurred.